**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAVID MCCOY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**YELP INC.,**<br><br>**Defendant.** | **No. 25-cv-3531-ZMF** |

**OPINION**

## I. INTRODUCTION

Plaintiff David McCoy brings this action against his former employer, Yelp Inc., alleging that Yelp discriminated against him, refused to rehire him because of his disability, and retaliated against him for engaging in protected activity, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 et seq. *See* Compl. ¶¶ 22–33, ECF No 1-1.

Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mem. of P. & A. in Supp. of Yelp's Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 8. For the reasons explained below, Defendant's motion will be GRANTED in part and DENIED in part.

## II. BACKGROUND

Plaintiff began working for Yelp in January 2019 as a Trainee before receiving a series of promotions to Account Executive, Junior Account Executive, and Senior Account Executive. *See* Compl. ¶ 4. Throughout his employment, Plaintiff generally met or exceeded his sales quotas and

was selected for Yelp's Management Training Program, which Plaintiff alleges was reserved for high-performing employees. *See id.* ¶¶ 5–7.

In late 2021, Plaintiff was diagnosed with lung cancer and underwent chemotherapy treatment. *See id.* ¶ 8. During his treatment, Plaintiff remained in contact with Yelp's leave specialists concerning medical documentation, fitness-for-duty requirements, requests for accommodation, and his anticipated return to work. *See id.* Plaintiff alleges that Yelp management and Human Resources repeatedly encouraged him to return to work while he was still undergoing chemotherapy and rehabilitation. *See id.* ¶ 11.

Plaintiff's cancer recurred in 2022. *See id.* ¶ 9. This caused significant breathing difficulties while conducting sales calls. *See id.* Human Resources instructed him to stop making sales calls. *See id.* On October 22, 2022, Yelp terminated Plaintiff's employment. *See id.* ¶ 10. Yelp allegedly informed Plaintiff that he could not perform his job because of his cancer. *See id.* Plaintiff alleges that Yelp advised him at the time of his termination that he could contact Human Resources to seek reemployment once he was able to return to work. *See id.* ¶ 13.

On May 7, 2025, Plaintiff applied for an Account Manager position with Yelp. *See id.* ¶ 16. Plaintiff completed both a telephone screening interview and a video interview. *See id.* Plaintiff alleges that his interviewer focused extensively on Plaintiff's cancer diagnosis and treatment history rather than his qualifications. *See id.* ¶ 17. Two days later, Yelp informed Plaintiff that it had selected another candidate whose qualifications more closely matched the position's needs. *See id.* ¶ 18. Plaintiff alleges that the position remained posted after his rejection. *See id.* ¶ 19.

On September 4, 2025, Plaintiff commenced this action in Superior Court. *See* Not. of Removal 1, ECF No. 1. On October 1, 2025, Yelp removed this action to federal court. *See id.* Count I alleges wrongful termination under the DCHRA. *See* Compl. ¶¶ 22–25. Counts II and III

allege disability discrimination based on Yelp's refusal to hire Plaintiff for the Account Manager position in violation of the ADA and DCHRA. *See id.* ¶¶ 26–30. Count IV alleges that Yelp refused to rehire Plaintiff in retaliation for his requests for medical leave and accommodations, as well as his participation as a witness in another matter adverse to Yelp. *See id.* ¶¶ 31–33.

## III. LEGAL STANDARD

Under Rule 12, a complaint is subject to dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For the purposes of this motion, dismissal under Rule 12(b)(6) may be appropriate on two grounds: (1) the complaint is facially time-barred; and/or (2) the complaint fails to state a plausible claim for relief. When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Furthermore, the court must construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).

Ordinarily, a statute-of-limitations defense is an affirmative defense that is not resolved on a motion to dismiss. *See* Fed. R. Civ. P. 8(c)(1); *see also Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014) ("Because statute of limitations defenses often are based on contested facts, the court should be cautious in granting a motion to dismiss on such grounds."). Nevertheless, "dismissal [under Rule 12(b)(6)] is appropriate [] if the complaint on its face is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

## IV. DISCUSSION

### A. Statute of Limitations

The DCHRA requires a private civil action to be filed within two years of the alleged unlawful discriminatory practice. *See* D.C. Code § 2-1403.16(b)(1). A discrimination claim

accrues when the plaintiff learns of the discriminatory employment decision, not when its consequences are ultimately felt. *See Brown v. Nat'l Acad. of Scis.*, 844 A.2d 1113, 1118 (D.C. 2004).

Plaintiff does not dispute that Count I was filed outside of the limitations period. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") 3–4, ECF No. 15. Thus, "the complaint on its face is conclusively time-barred." *Firestone*, 76 F.3d at 1209. However, Plaintiff argues that the limitations period should be excused because his cancer treatment equitably tolled the period and because Yelp's post-termination communications regarding possible reemployment lulled him into delaying suit. *See* Pl.'s Opp'n at 3–4. The Court rejects these arguments in turn.

*i. Equitable Tolling*

Equitable tolling "is granted only in 'extraordinary and carefully circumscribed circumstances.'" *Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007) (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998)). A litigant "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

1. Diligence

To demonstrate diligence, a plaintiff must show that he actively and continuously pursued his legal rights throughout the limitations period. *See Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006). Courts reject equitable tolling where a plaintiff cannot explain why he failed to timely file despite having the ability to do so: for example, where a plaintiff had the "presence of mind to consult a lawyer" before the filing deadline. *Smith-Haynie*, 155 F.3d at 580.

Plaintiff alleges no effort to challenge his termination, investigate a potential legal claim, or otherwise pursue his rights before the statute of limitations expired. *See generally* Compl. Nor does Plaintiff allege that he sought legal advice, pursued administrative remedies, or otherwise attempted to preserve his claim during that period. *See id.* As such, the Complaint does not plausibly allege diligence. *See Smith-Haynie*, 155 F.3d at 580.

2. Extraordinary-circumstances

To satisfy the extraordinary-circumstances element, a plaintiff must demonstrate that an obstacle "beyond his control" prevented timely filing. *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014) (citing *Dyson v. District of Columbia,* 710 F.3d 415, 422 (D.C. Cir. 2013)). The obstacle must be external to the litigant. *See id.* at 59. The obstacle cannot result from a misunderstanding of the law, litigation strategy, or other circumstances within the plaintiff's control. *See id.* at 58.

Where a plaintiff alleges exceptional circumstances based on a medical condition, he must demonstrate that the condition rendered him unable to "comprehend [his] legal rights" or "handl[e] [his] own affairs." *Smith-Haynie*, 155 F.3d at 580 (addressing mental incapacity); *see also Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (addressing physical incapacity). Courts have consistently declined to find extraordinary circumstances based on generalized allegations of mental anguish or other significant medical hardship absent a particularized showing that the plaintiff was incapacitated. *See, e.g.*, *Charles v. Brennan*, 174 F. Supp. 3d 97, 102–03 (D.D.C. 2016) (finding depression was not an extraordinary circumstance); *Barbett v. Logistics Application, Inc.*, 845 F. Supp. 2d 164, 168 (D.D.C. 2012) (finding mental anguish was not an extraordinary circumstance). Accordingly, courts have looked for objective indicia of incapacity, such as adjudications of incompetence, the appointment of a guardian or caretaker, or the execution

of a power of attorney. *See Speiser v. U.S. Dep't of Health & Hum. Servs.*, 670 F. Supp. 380, 385 (D.D.C. 1986). For example, the plaintiff in *Speiser* was hospitalized on five separate occasions for a total of sixty-five days after resigning from her employment. *See id.* at 382. Nevertheless, the court declined to find exceptional circumstances because the plaintiff failed to demonstrate that her illness rendered her incapable of managing her affairs or understanding her legal rights. *See id.* at 384–85. Although the record showed that she suffered from depression and was preoccupied with the circumstances surrounding her resignation, plaintiff understood her legal rights at the time of her resignation and was represented by counsel in the months that followed. *See id.* at 385. And, critically, plaintiff had never been adjudicated incompetent, executed a power of attorney, had a guardian or caretaker appointed, or otherwise taken steps to have another person manage her affairs. *See id.* In short, while the plaintiff "clearly suffer[ed] from a legitimate mental illness," she failed to show that it disabled her "to the requisite degree." *Id.*

Plaintiff's circumstances fall short of the ones rejected in *Speiser*. Plaintiff argues that "[he] was incapacitated due to Stage IV lung cancer treatment, including chemotherapy, difficulty breathing, and rehabilitation to regain mobility." Compl. ¶ 12. But he does not allege an extended hospitalization or other extraordinary circumstances that rendered him unable to timely pursue his claims. *See generally* Compl. Indeed, the Complaint contains no allegations that Plaintiff was unable to comprehend his legal rights, unable to communicate with others, or "incapable of handling his own affairs." *Craig-Davidson v. McDonough*, 35 Vet. App. 281, 293 (2022)*; see generally* Compl. Nor does Plaintiff allege any of the objective indicia of incapacity identified in *Speiser*, such as the appointment of a guardian, execution of a power of attorney, or reliance on another individual to handle his affairs. *See generally* Compl. To the contrary, Plaintiff alleges that throughout the relevant period he communicated with Yelp regarding his leave, requested

accommodations, and discussed his eventual return to work. *See id.* ¶ 8. Those allegations demonstrate that Plaintiff remained capable of managing his affairs, not that he was so incapacitated that he could not timely pursue his legal rights. *See Craig-Davidson*, 35 Vet. App. at 284–85, 293 (finding equitable tolling appropriate for an appeal filed 82 days late where the claimant's terminal lung cancer required hospice care, treatment caused him to sleep most of the day, and he was periodically unconscious, all during the COVID-19 pandemic). As such, the Complaint does not plausibly allege an extraordinary circumstance. *See Speiser*, 670 F. Supp. at 385.

*ii. Lulling*

Alternatively, a defendant may be estopped from asserting a statute-of-limitations defense where he has "done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run." *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156–57 (D.C. 1998) (quoting *Bond v. Serano*, 566 A.2d 47, 50 (D.C. 1989)). This doctrine is "a very narrow equitable exception to rigorous filing requirements." *Bradford v. George Washington Univ.*, 249 F. Supp. 3d 325, 336 (D.D.C. 2017). Accordingly, a plaintiff must allege that "the defendant did 'something that amounted to an affirmative inducement to plaintiff[ ] to delay bringing action.'" *Z-Modular, LLC v. MCN Build, Inc.*, 729 F. Supp. 3d 1, 16 (D.D.C. 2024) (quoting *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986)). The misconduct "must generally be 'designed' to prevent a plaintiff from litigating in time." *Id.* (quoting *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1191 (D.C. 1980)). Mere silence or vague assurances are insufficient. *See id.*

Plaintiff contends that Yelp's continued communications with him after his termination lulled him into delaying the filing of this action. Specifically, Plaintiff claims that Yelp informed

Plaintiff post-termination that he could "contact HR to initiate reemployment" once he was able to return to work. Compl. ¶ 13. He further alleges that he remained in contact with Yelp's Human Resources and leave personnel regarding medical leave, return-to-work documentation, and his anticipated recovery. *See id.* ¶ 8. Finally, he alleges that, after recovering, he applied for a new Account Manager position in May 2025 and interviewed for that position before Yelp ultimately declined to hire him. *See id.* ¶¶ 16–18.

But these allegations only reflect that Yelp informed Plaintiff he could seek reemployment once he recovered. An employer's willingness to consider or even promise future reemployment does not automatically suggest that the prior termination was unlawful or that the employee need not timely challenge it. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980) (explaining that an employer's later reconsideration of an adverse employment decision does not toll the limitations period). A representation that Plaintiff could seek reemployment after recovering from cancer concerns an employment decision *separate* from Plaintiff's October 2022 termination. *See* Compl. ¶ 10. Plaintiff has made no allegations, nor can the Court draw any inferences that Yelp implied it would rescind the *earlier* termination or otherwise remedy the alleged employment law violation without litigation. Under these circumstances, a reasonable employee should believe both that he might be rehired in the future and that he remained obligated to timely pursue any legal challenge to his prior termination. *See Nono v. George Wash. Univ.*, 245 F. Supp. 3d 141, 146 & n.1 (D.D.C. 2017).

In *Nono*, the plaintiff argued that he delayed filing an EEOC complaint because his employer had promised to rehire him after his termination. *See id.* The court rejected that as a basis for equitable tolling. *See id.* The court first noted that the complaint alleged no facts identifying who made the alleged promise to rehire or the communication in which it was conveyed. *See id.*

at 146 n.1. And, in any event, the court explained that even if the employer had made such a promise, it would not have "prohibit[ed] him from filing a timely EEOC charge." *Id.*

The same is true here. The Complaint neither identifies the communication in which Yelp promised to rehire Plaintiff or who allegedly made such representation. *See* Compl. ¶ 13 ("Yelp advised Plaintiff at termination that he could contact HR to initiate reemployment once he was able to return."). And Plaintiff has alleged no facts suggesting that Yelp induced him to forgo timely legal action. Like the plaintiff in *Nono*, Plaintiff offers only the conclusory assertion that "Plaintiff relied on this assurance [of reemployment], further delaying pursuit of legal action." *Id*. The promise of reemployment, standing alone, does not constitute affirmative misconduct by the defendant designed to induce delay and reasonable reliance on that misconduct. *See Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007). As such, the Complaint does not plausibly allege lulling. *See id.*

B. Qualified Individual

To state a claim for disability discrimination under either the ADA or the DCHRA, a plaintiff must plausibly allege, among other things, that he was a "qualified individual." *See Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 62 (D.D.C. 2019). A "qualified individual" is one whom, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 310 (D.D.C. 2015) (quoting 42 U.S.C. § 12111(8)). "[C]ourts generally view a dispute over the definition of a job's essential functions as a question of fact that should be resolved by a jury." *Baker v. Potter*, 294 F. Supp. 2d 33, 44 (D.D.C. 2003). Consequently, it is "rare on a motion to dismiss" to resolve disputes concerning essential job functions. *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 94 (D.D.C. 2021).

Defendant argues that Counts II and III fail because Plaintiff has not plausibly alleged that he was a "qualified individual."[1] *See* Mot. to Dismiss at 5–6. Counts II and III concern Yelp's alleged failure to hire Plaintiff for the position of Account Manager nearly three years after his termination as a Senior Account Executive. *See* Compl. ¶¶ 4, 16.

Defendant's argument rests on Plaintiff's allegation that, in October 2022, he had trouble breathing during telephone calls while employed as a Senior Account Executive. *See* Mot. to Dismiss at 6. But that allegation does not establish that Plaintiff remained unable to perform the essential functions of the Account Manager position nearly three years later. The Complaint alleges the opposite: that Plaintiff sought reemployment *after* recovering from his cancer treatment. *See* Compl. ¶¶ 13, 15–16. At the motion-to-dismiss stage, the Court must draw all reasonable inferences in Plaintiff's favor, including that his condition had materially improved by May 2025.

Defendant's reliance on *Baron v. Dulinski* is misplaced. *See* Mot. to Dismiss at 6 (citing 928 F. Supp. 2d 38, 42 (D.D.C. 2013)). In *Baron*, the complaint itself established that the plaintiff could not perform the essential functions of her position. *See* 928 F. Supp. 2d at 41–42 (finding that the plaintiff was not a qualified individual where the complaint alleged that she was permanently disabled because of a workplace injury and therefore could not perform the essential functions of her former position). Here, by contrast, the Complaint contains no factual allegations demonstrating that Plaintiff was incapable of performing the essential functions of the Account Manager position. *See generally* Compl. Rather, Plaintiff alleges facts supporting the opposite inference. Plaintiff alleges that he had fully recovered before seeking reemployment, advanced

---

[1] Defendant made the same argument as to Count I. But the Court need not address it because Count I is barred by the applicable statute of limitations. *See supra* Part IV.A.

through Yelp's interview process, and had previously excelled in a similar sales role at Yelp, where he received multiple promotions and consistently met sales expectations. *See id.* ¶¶ 4–7.

Plaintiff's allegations are similar to those found sufficient in *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53 (D.D.C. 2019). There, the plaintiff alleged that she previously held two positions with the defendant and that the defendant had identified a new position for her. *See Epps*, 389 F. Supp. 3d 53 at 65. The court concluded that those allegations were sufficient at the motion-to-dismiss stage to support an inference that the plaintiff was a qualified individual. *See id.* Likewise, Plaintiff's allegation that he was healthy, his prior employment with Yelp, his successful performance in a similar role, and Yelp's decision to advance him through multiple stages of the hiring process support a reasonable inference that he was qualified for the Account Manager position. *See* Compl. ¶¶ 4–7, 16; *see, e.g.*, *Epps*, 389 F. Supp. 3d at 63–65. "The Court's reluctance to conclude that Plaintiff was not qualified for any position with Defendant[] at this stage in the litigation is supported by the D.C. Circuit's caution that a plaintiff 'need not plead facts showing each of [the] elements' of a discrimination claim 'in order to defeat a motion under Rule 12(b)(6).'" *Epps*, 389 F. Supp. 3d at 65 (quoting *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015)).

C. <u>Retaliation</u>

To state a retaliation claim under the ADA or the DCHRA, Plaintiff must plausibly allege that he engaged in protected activity, suffered a materially adverse action, and that the adverse action was taken because of the protected activity. *See Jones v. District of Columbia*, 314 F. Supp.

3d 36, 55 (D.D.C. 2018); *see also Bryant v. District of Columbia*, 102 A.3d 264, 268 (D.C. 2014) (noting that the analysis for DCHRA retaliation is the same as for the ADA).

Defendant moves to dismiss Count IV for failing to state a claim. *See* Mot. to Dismiss at 7. Defendant argues that Plaintiff has not alleged sufficient facts to support a plausible inference that Yelp declined to hire him in retaliation for protected activity. *See id.* Specifically, Defendant contends that Plaintiff "provides no dates, context, or other detail that would allow the Court to plausibly infer any causal connection between the alleged protected activity and adverse action." *Id*. To survive this argument, Plaintiff need only plead sufficient facts to state a plausible claim. Although Rule 8 requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," it does not require detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant is wrong. Plaintiff does more than simply allege that Yelp retaliated against him. The Complaint alleges that Yelp was aware of Plaintiff's medical condition because of his requested accommodations. *See* Compl. ¶¶ 9–10. The Complaint further alleges that Plaintiff reapplied for employment after his recovery and interviewed for an Account Manager position. *See id.* ¶¶ 16–17. During that interview, Plaintiff alleges that the interviewer focused extensively on Plaintiff's lung cancer and treatment history rather than Plaintiff's qualifications and sales experience. *See id.* ¶ 17. Plaintiff further alleges that when he asked about accommodations, the interviewer expressed unfamiliarity and instead continued discussing Plaintiff's medical history. *See id.* Two days later, Yelp declined to hire Plaintiff. *See id.* ¶ 18.

These allegations provide sufficient factual context for Plaintiff's retaliation theory. They are not merely a conclusory assertion that Defendant acted with retaliatory motive. Indeed, "[i]t is sufficient at this stage of the proceedings for a plaintiff to plead causation 'simply by alleging that

the adverse actions were caused by his protected activity.'" *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 323 (D.D.C. 2016) (quoting *Bryant v. Pepco*, 730 F. Supp. 2d 25, 32 (D.D.C. 2010)).

Defendant's reliance on *Baker-Notter v. Freedom F., Inc.* is misplaced. *See* Mot. to Dismiss at 7 (citing No. 18-cv-2499, 2019 WL 4601726, at *7 (D.D.C. Sept. 23, 2019)). There, the complaint alleged little more than that the defendant had "subjected [her] to retaliation" and that there was "a causal relationship between the protected activity and the adverse employment action." *Baker-Notter*, 2019 WL 4601726, at *7. That is precisely the sort of formulaic recitation of the elements that *Twombly* and *Iqbal* prohibit. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. The Complaint here contains considerably more. Rather than simply asserting that Yelp retaliated against him, Plaintiff alleges the facts on which that assertion rests, including the circumstances surrounding his accommodation requests, the substance of his subsequent interview, and the timing of Yelp's refusal to hire him. *See* Compl. ¶¶ 9–10, 16–18. These facts are sufficient to plausibly state a retaliation claim.[2] *See McNair v. District of Columbia*, 213 F. Supp. 3d 81, 89–90 (D.D.C. 2016) (holding that at the motion to dismiss stage, an inference of causation can be supported through facts establishing a specific retaliatory act and a close temporal proximity to the protected activity); *see also Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 38 (D.D.C. 2018) ("At the motion to dismiss stage, the hurdle of alleging a causal link is not a high one."). Thus, Count IV survives Defendant's motion to dismiss.

---

[2] Plaintiff also alleges retaliation for his protected activity by "participating as a witness in a matter adverse to Yelp." Compl. ¶¶ 31–32. This allegation is wholly conclusory. The Complaint contains no factual allegations describing the proceeding, the nature of Plaintiff's participation, or any connection between that activity and Yelp's hiring decision. Accordingly, that allegation does not independently support Plaintiff's retaliation claim. *See Baker-Notter*, 2019 WL 4601726, at *7. However, this does not impact the Court's holding because a Rule 12(b)(6) motion is not a vehicle for dismissing individual allegations or theories within an otherwise viable claim. *See McDaniel v. Vilsack*, 947 F. Supp. 2d 24, 26 n.1 (D.D.C. 2013) ("In general, a motion to dismiss under Rule 12(b)(6) is not an appropriate device to use to eliminate a portion of a claim.").

## V. CONCLUSION

The Court GRANTS the motion to dismiss as to Count I. The Court DENIES the motion to dismiss Counts II, III, and IV.

Zia M.Faruqui

Digitally signed by Zia M.Faruqui
Date: 2026.08.28 18:31:57 -04'00'

Date: August 28, 2026

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE